UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 21-22215-CIV-MARTINEZ

CHARISSE SANDS,

    Plaintiff,

v.

ROBERT HALF INTERNATIONAL, INC.,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendant Robert Half International, Inc.'s Motion to Dismiss. (ECF No. 6). After careful consideration of the Complaint and relevant briefing, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss.

## BACKGROUND

Plaintiff Charisse Sands is a dark-skinned African American woman over the age of forty. (Compl. ¶¶ 9, 58, ECF No. 1). In 2010, she began working for Robert Half, a legal recruitment firm. (*Id.* ¶¶ 10–11). Plaintiff alleges that between 2011 and 2019 she was the recipient of various awards for her performance. (*Id.* ¶¶ 12–15). Specifically, in 2011, she was awarded Rookie of the Year based on her performance in recruitment and placement of legal professionals within the legal industry. (*Id.* ¶ 12). In 2018, she was awarded the "President's Club" distinction for having the second fastest growing division in the world at Robert Half. (*Id.* ¶ 13). The same year, Plaintiff was named to the "Million Dollar Club," an accolade given to high revenue generating employees. (*Id.* ¶ 14). A year later, she was one of twenty-five employees selected to attend Robert Half's

Leadership Summit, a program designed to foster skills for directors on a path to advanced leadership. (*Id.* ¶ 15).

In 2018, Robert Half made Tony Trombetta, a white male, the Regional Manager of the branch where Plaintiff worked. (Compl. ¶ 16). About a year into Trombetta's tenure, Plaintiff reported Trombetta's alleged mismanagement to the District President of Robert Half. (*Id.* ¶ 17). She reported that Trombetta "routinely did not work on Mondays and Fridays in violation of company policy and that he was violating the sales tracking rules which affected Sands' team's bonuses." (*Id.* ¶ 18).

After reporting Trombetta's conduct, Plaintiff alleges Trombetta began sabotaging her production and leadership, which impacted her ability to generate revenue. (Compl. ¶¶ 19–20). Trombetta allegedly prohibited Plaintiff from terminating an underperforming worker who was not going to improve. (*Id.* ¶ 22). He also advised her to become an individual producer because she would not have any more opportunities for elevated leadership for at least two years. (*Id.* ¶ 24). Becoming an individual producer made Plaintiff ineligible for promotion and impacted her earning potential. (*Id.*).

Later, Robert Half hired Jose Silva, a light-skinned white male, as Division Director to manage two team members that previously reported to Plaintiff. (Compl. ¶¶ 25, 61–62). Trombetta authorized Silva to terminate both of Plaintiff's team members, including the underperforming employee Plaintiff previously sought authorization to terminate. (*Id.* ¶ 26). After the terminations, only one newly-hired employee assisted Plaintiff with recruiting. (*Id.* ¶ 27).

At some point, Trombetta learned that Plaintiff was going through a divorce. (Compl. ¶ 28). When he learned of this information, Trombetta told Plaintiff she should work from home "to take care of her baby." (*Id.*). Plaintiff had never requested an accommodation due to her

divorce. (*Id.*). Even before Trombetta became Regional Manager, Plaintiff's divorce was pending, and she still had one of the top-producing teams. (*Id.*).

Plaintiff declined to work from home. (Compl. ¶ 29). In response, Trombetta attempted to "force her to work from home" by trying to take her desk away and requiring that she receive permission to come to the office from team administration. (*Id.*). Plaintiff reported the issues she had with her coworkers and working conditions to Robert Half, but Robert Half took no action. (*Id.* ¶¶ 30–32).

Robert Half then advised Plaintiff that her production had declined. (Compl. ¶ 33). Plaintiff attempted to address her production metrics, stating the metrics were misleading and the decline was "through no fault of her own but due to racial biases among team members and co-workers sabotaging her efforts." (*Id.* ¶ 33). She attributes her declining numbers to "internal attempts to sabotage her orders, stealing clients and [Robert Half]'s failure to address the issues that Sands continuously raised." (*Id.* ¶ 32). Robert Half allegedly continued to ignore Plaintiff's concerns and ultimately terminated her. (*Id.* ¶ 34).

After her termination, Robert Half promoted Silva to the same leadership position that Trombetta previously informed Plaintiff she was ineligible for two years. (Compl. ¶ 35). Robert Half also terminated another employee Plaintiff had previously recommended firing due to his hostile work behavior. (*Id.* ¶ 36). Plaintiff alleges Robert Half immediately fired this employee after a white employee complained about the hostile behavior. (*Id.*).

On September 4, 2020, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 6). On March 18, 2021, the EEOC issued a Notice of Right to Sue. (*Id.* ¶ 8; *see also* ECF No. 1-1). Plaintiff initiated this action approximately three months later. She raises claims under several statutory frameworks, including

3

> **Title VII of the Civil Rights Act ("Title VII")** for gender discrimination (Count I), retaliation (Count II), race discrimination (Count III), and color discrimination (Count IV);
>
> **Age Discrimination in Employment Act of 1967 ("ADEA")** for age discrimination (Count V);
>
> **Florida Civil Rights Act ("FCRA")** for retaliation (Count VI), race discrimination (Count VII), color discrimination (Count VIII), sex discrimination[1] (Count IX), and age discrimination[2] (Count X).

(Compl. at 4–12). Robert Half moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. (Mot. at 1, ECF No. 6).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" will be dismissed. To survive dismissal, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this stage of the case, "the question is whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration adopted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court construes the allegations "in the light most favorable to plaintiff." *Speaker v. U.S. HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

---

[1] Plaintiff asserts both a sex and gender discrimination claim (Counts I & IX). Sex discrimination under Title VII includes discrimination based on gender. *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989). Here, Plaintiff's sex discrimination claim (Count IX) makes no mention of her sex and appears to be in support of an age discrimination claim. (*See* Compl. ¶¶ 92–99). Accordingly, the Court will dismiss Plaintiff's Count IX for "sex" discrimination, but will consider the allegations set forth in that claim when evaluating Plaintiff's age discrimination claims (Counts V & X).

[2] Plaintiff asserts an age discrimination claim under the "Florida Age Discrimination Act." (Count X). Although Defendant is correct that there is no such Act, the Court interprets Count X to be brought under the FCRA.

**DISCUSSION**

As explained below, the Court dismisses Plaintiff's age discrimination and retaliation claims. Her claims for race, gender, and color discrimination survive dismissal.

1. **Title VII and FCRA Claims**[3]

Plaintiff brings claims under Title VII and the FCRA for gender, race, and color discrimination. Title VII prohibits employers from "discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also* § 760.10(1), Fla. Stat. "A Title VII plaintiff can make a case by proving either disparate treatment or disparate impact." *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 546 (11th Cir. 1991). To establish a disparate treatment claim, "the employee must prove that the employer intentionally discriminated against her." *Id.* In the alternative, a plaintiff can "can recover under the disparate impact theory by proving that some employment practice that is facially neutral in its treatment of similarly situated employees has a disproportionately adverse effect on those employees who are a member of some protected class." *Id.*

Here, Plaintiff presents a disparate treatment claim by alleging she was treated less favorably than others because she is a dark-skinned African American female over the age of forty. Plaintiff can establish disparate treatment in two ways. She can either prove disparate treatment "by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic." *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018,

---

[3] "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (internal citation omitted).

5

1026 (11th Cir. 2016). Or she can set forth a prima facie case of discrimination by establishing that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (explaining the elements of a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). With respect to the fourth element of a prima facie case, "the plaintiff must show that she and the other employee were similarly situated in 'all relevant respects.'" *Arafat v. Sch. Bd.*, 549 F. App'x 872, 874 (11th Cir. 2013) (citation omitted). This means that a comparator "should, generally, have (1) engaged in the same basic conduct (or misconduct); (2) been subject to the same employment policy, guideline, or rule; (3) been under the jurisdiction of the same supervisor; and (4) shared a similar employment or disciplinary history to the plaintiff." *Hester v. Univ. of Ala. Birmingham Hosp.*, 798 F. App'x 453, 456 (11th Cir. 2020) (internal quotation marks omitted) (quoting *Lewis v. Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019)). If a plaintiff establishes a prima facie case of discrimination, the defendant bears the burden of producing a neutral explanation for its action, which the plaintiff may challenge as pretextual. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

But Plaintiff need not prove her case now. To avoid dismissal, Plaintiff "must simply provide enough factual matter to plausibly suggest intentional discrimination." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017). The well-pleaded facts must "permit the court to infer more than . . . the mere possibility of unlawful discrimination." *Lacy v. City of Huntsville Ala.*, No. 21-11410, 2022 U.S. App. LEXIS 3035, at *10 (11th Cir. Feb. 2, 2022) (citing *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted); *see also Naraine v. City of Hollywood*, No.

21-civ-60313, 2021 U.S. Dist. LEXIS 105914, at *11–12 (S.D. Fla. June 3, 2021) (explaining how "to determine what the plaintiff must plausibly allege at the outset of a lawsuit, [courts] usually ask what the plaintiff must prove in the trial at its end" (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)).

Relatedly, the components of a prima facie case "should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This is especially true with respect to the fourth element of the prima facie case—the requirement of a similarly-situated comparator. At the motion to dismiss stage, and even on summary judgment, a comparator may not always be necessary. *See Troupe v. DeJoy*, 861 F. App'x 291, 294 (11th Cir. 2021); *Bardelas v. City of Doral*, No. 20-cv-24894, 2021 U.S. Dist. LEXIS 158943, at *23 (S.D. Fla. Aug. 23, 2021). "If a plaintiff cannot produce a comparator, [s]he can still present a triable issue of fact through a 'convincing mosaic' of circumstantial evidence that would allow an inference of discriminatory intent." *Butts v. CentiMark Roofing Corp.*, No. 21-12565, 2022 U.S. App. LEXIS 8354, at *5 (11th Cir. Mar. 30, 2022) (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019)). A convincing mosaic comprises of "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent may be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

With these principles in mind, the Court turns to the facts presented here. To begin, Defendant concedes that Plaintiff is a member of a protected class and that she was subject to an adverse employment action. (Mot. at 7). Accordingly, the Court examines only whether Plaintiff was qualified for her position and whether Plaintiff adequately alleged a comparator. As to

whether Plaintiff was qualified for her position, Plaintiff alleges that Robert Half hired her in 2010, she was awarded "Rookie of the Year" in 2011, she was awarded the "President's Club" distinction in 2018 for being part of the fastest growing division in Robert Half, and that same year, she was placed in the "Million Dollar Club," which was reserved for high revenue generating employees. (Compl. ¶¶ 11–14). In addition, Robert Half selected Plaintiff as one of twenty-five employees to attend its Leadership Summit in 2019, a program designed to foster advanced skills for directors on a path to advanced leadership. (*Id.* ¶ 15). Based on these allegations, the Court can reasonably infer that Plaintiff was qualified for her position.

Next, the Court evaluates whether Plaintiff alleges a comparator. This element may be satisfied "by allegations that Plaintiff was 'replaced by someone outside the protected class,' or that 'similarly situated employees outside of the protected class were treated differently.'" *Naraine*, 2021 U.S. Dist. LEXIS 105914, at *17 (internal citations omitted). Importantly, "a substantive analysis on whether comparators are similarly situated in all material respects is better reserved for summary judgment, following discovery." *Albert v. Palm Beach Cnty. Bd. of Comm'rs*, No. 21-cv-80804, 2022 U.S. Dist. LEXIS 44645, at *7 (S.D. Fla. Mar. 14, 2022). Even so, "the Court is not precluded at this stage from determining whether Plaintiff plausibly has alleged proper comparators." *Id.*

Here, Plaintiff alleges that Trombetta told her she was ineligible for promotion for two years. (Compl. ¶¶ 17–18). So, she became an individual producer. When she did, Silva, who replaced her, was authorized to terminate employees Plaintiff was denied authorization to terminate, and, ultimately, was elevated to the leadership position for which Plaintiff was supposedly ineligible. (*Id.* ¶¶ 24–26, 35). Applying these allegations to the flexible pleading standard imposed here, Plaintiff adequately alleges a similarly situated employee outside of her

race, gender, and color was treated more favorably. The Court denies Robert Half's Motion to Dismiss Counts I, III, IV, VII, VIII.

## 2. ADEA and FCRA Claims[4]

Plaintiff also alleges that Robert Half discriminated against her because she is over the age of forty and that Silva, "a younger male," "was given the leadership position that Sands was told was not available." (*See* Compl. ¶¶ 64, 105). Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To survival dismissal, Plaintiff must adequately allege "(1) that [s]he was a member of the protected group of persons between the ages of forty and seventy; (2) that [s]he was subject to adverse employment action; (3) that a substantially younger person filled the position . . . from which [s]he was discharged; and (4) that [s]he was qualified to do the job . . . ." *Suarez v. Padron*, No. 18-cv-23920, 2019 U.S. Dist. LEXIS 14838, at *10–11 (S.D. Fla. Jan. 29, 2019) (citation omitted). Moreover, "[t]o succeed at trial . . . the plaintiff must prove that age was the 'but for' cause of the adverse employment decision giving rise to her complaint." *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Plaintiff fails to state a claim for age discrimination because she does not adequately allege that Silva is "substantially younger" than her. All the Complaint alleges is that Plaintiff is over forty and that Silva is younger. Younger could mean a day or a decade. Without additional facts,

---

[4] Because federal case law interpreting the ADEA applies to cases arising under the FCRA, this Court analyzes Plaintiff's ADEA and FCRA jointly. *See Bentley v. Miami Air Int'l*, No. 16-cv-24607, 2017 U.S. Dist. LEXIS 234188, at *7 n.2 (S.D. Fla. Feb. 13, 2017) (citing *Ashkenazi v. South Broward Hosp. Dist.*, 607 F. App'x 958, 960–61 (11th Cir. 2015)).

Counts V and X fail to state a claim upon which relief can be granted. *See Ray v. City of Opa-Locka*, No. 12-cv-21769, 2012 U.S. Dist. LEXIS 148136, at *5–6 (S.D. Fla. Oct. 15, 2012) (dismissing age discrimination claims where plaintiff pled "that she was over 40 and the person who filled the position was younger" because the person who filled her position "could be just months or even days younger" than plaintiff).

### 3. Retaliation Claims

In addition to her discrimination claims, Plaintiff alleges she was wrongfully retaliated against in violation of Title VII and the FCRA. "To state a retaliation claim, the plaintiff must establish that he or she engaged in protected activity and suffered an adverse employment action, and 'that the adverse employment action was causally related to the protected activity.'" *Jones v. Unity Behavioral Health, LLC*, 20-cv-14265, 2021 U.S. App. LEXIS 34835, at *5 (11th Cir. Nov. 23, 2021) (quoting *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)). To adequately allege a causal connection, Plaintiff must show "the protected activity and the negative employment action were not completely unrelated." *Jones v. Dep't of Corr.*, 792 F. App'x. 694, 697 (11th Cir. 2019) (alteration adopted) (quoting *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1260 (11th Cir. 2012)). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (citation omitted). This awareness "may be established by circumstantial evidence." *Id.*

There are two types of statutorily protected conduct: (1) opposition to "any practice made an unlawful employment practice by this subchapter (the opposition clause)"; and (2) when a person "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter (the participation clause)." *Ceus v. City of Tampa*,

803 F. App'x 235, 245 (11th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)). Here, Plaintiff's allegations implicate the opposition clause. "A plaintiff can establish a *prima facie* case of retaliation under the Opposition Clause if she shows that she had a 'good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Anduze v. Fla. Atl. Univ.*, 151 F. App'x 875, 878 (11th Cir. 2005) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). To satisfy this standard, "[a] plaintiff must not only show that she subjectively (that is, in good faith) believed that her employer was engaged in unlawful employment practices, but also that her belief was objectively reasonable in light of the facts and record presented." *Id.* (alterations adopted).

Plaintiff alleges she "engaged in protected activity by reporting behavior, including racists comments, which violated [Defendant's] policies." (Compl. ¶ 71; *see also id.* ¶ 46). Shortly after reporting these comments, Plaintiff contends she was terminated. (Compl. ¶ 72). But Plaintiff does not allege when these comments were made, the content of the comments, who made them and to whom, or that the individual or department responsible for her termination even knew she reported the "racist comments." Without additional facts, Plaintiff cannot state a claim for retaliation. *See Collins v. Dep't of Children & Families*, No. 19-cv-21236, 2019 U.S. Dist. LEXIS 191696, at *4 (S.D. Fla. Nov. 5, 2019) (dismissing claim for retaliatory termination based on medical diagnosis or disability because the complaint "lack[ed] any specificity about her medical condition or the complaints she made"); *Smith v. Bottling Grp., LLC*, No. 16-cv-771, 2016 U.S. Dist. LEXIS 66658, at *10 (M.D. Fla. May 20, 2016) (dismissing retaliation claims because plaintiff did not allege when he complained about the alleged "racist comment"); *Townsend v. Hilton Worldwide, Inc.*, No. 16-cv-990, 2016 U.S. Dist. LEXIS 151452, at *15 (M.D. Fla. Nov. 1, 2016) (finding allegations of "racist behavior" entirely conclusory). With respect to Plaintiff's

report to the District President about Mr. Trombetta's mismanagement, (Compl. ¶¶ 17–18, 45), this report is unrelated to a protected ground and therefore cannot support a claim for retaliation. *See Jones v. Unity Behav. Health, LLC*, No. 20-cv-14265, 2021 U.S. App. LEXIS 34835, at *6–7 (11th Cir. Nov. 23, 2021) (concluding that retaliation for advocating for pay raises "without a connection to discrimination, isn't protected activity under Title VII"). The Court dismisses Counts II and VI.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, (ECF No. 6), is **GRANTED IN PART AND DENIED IN PART**. Counts II, V, VI, IX, and X are **dismissed without prejudice**. The Motion to Dismiss is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13 day of June, 2022.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record